Slip Op. 16-6

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| THE CONTAINER STORE, | |
| Plaintiff, | |
| v. | Before: Mark A. Barnett, Judge |
| | Court No. 09-00327 |
| UNITED STATES, | |
| Defendant. | |

<u>OPINION</u>

[Plaintiff's motion for summary judgment is denied and Defendant's cross-motion for summary judgment is granted.]

Dated: January 21, 2016

*Robert B. Silverman* and *Robert F. Seely*, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP of New York, NY, argued for plaintiff.  With them on the brief was *Alan R. Klestadt*.

*Marcella Powell*, Trial Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, argued for defendant.  With her on the brief was *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, and *Amy M. Rubin*, Assistant Director.  Of counsel on the brief was *Paula Smith*, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of New York, NY.

Barnett, Judge:  Before the Court are cross-motions for summary judgment.

Plaintiff the Container Store ("Plaintiff" or "Container Store") contests the denial of

protests challenging U.S. Customs and Border Protection's ("Customs") liquidation of

the subject imports, elfa® top tracks and hanging standards made of epoxy-bonded

steel, under subheading 8302.41.60 of the Harmonized Tariff Schedule of the United

States ("HTSUS"), as base metal mountings suitable for buildings.  (*See generally* Pl.'s

Mot. for Summ. J. ("Pl.'s MSJ"), ECF No. 36.)  The Container Store contends that

Customs should have classified the subject imports in subheading 9403.90.80, HTSUS,

as parts of furniture.  Defendant United States ("Defendant" or "United States")

abandons Customs' original classification of the goods and contends that the proper

classification of subject imports falls within subheading 8302.42.30, HTSUS.  (Def.'s

Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Def.'s Cross-Mot. for

Summ. J. ("Def.'s Cross-MSJ") at 2, ECF No. 41; Def.'s Reply Mem. in Further Supp. of

Cross Mot. for Summ. J. ("Def.'s Reply") at 7, ECF No. 58.)

No genuine issue of material fact exists regarding the physical properties of the

subject imports or their function.[1]  Thus, the sole issue before the Court is the correct

classification of the subject merchandise, elfa® top tracks and hanging standards made

of steel.  For the reasons discussed below, the Court holds that the subject imports are

properly classified under subheading 8302.42.30, HTSUS, as base metal mountings,

fittings, and similar articles suitable for furniture.  Accordingly, the Court denies

---

[1] The Container Store contends that the facts agreed upon between the parties in a previous case before this court with the same subject merchandise—*Container Store v. United States*, 35 CIT __, 800 F. Supp. 2d 1329 (2011) (hereafter "*Container Store I*")— bind the parties in this litigation.  (Pl.'s MSJ at 2.)  The Container Store submitted as facts in this case "a brief recitation of the relevant facts from [Container Store I]."  (Pl.'s MSJ at 3.)  Apparently relying on facts from *Container Store I*, parties' briefs incorrectly allege that the subject merchandise was liquidated pursuant to two different classifications.  Upon review of the entry papers and Summons, the Court notes that the subject merchandise was liquidated under one classification.  (*Compare* Pl.'s MSJ at 2 and Def.'s Cross-MSJ at 2 *with* Summons at 2, ECF No. 1.)  Accordingly, this case is distinct from *Container Store I*.  The Court relies on the facts found in the entry papers and court documents of this case in reaching its decision.

Plaintiff's motion for summary judgment and grants Defendant's cross-motion for

summary judgment.

BACKGROUND AND PROCEDURAL HISTORY

## I.      Overview of the Subject Merchandise

        The subject merchandise is the Container Store's top tracks and hanging

standards, two components of its patented elfa® system.[2]  (Am. Compl. ¶¶ 5, 26, ECF

No. 27; Answer to Am. Compl. ("Answer") ¶¶ 5, 26, ECF No. 28.)  Consumers typically

purchase and assemble elfa® systems to provide storage for their homes and offices.

(Am. Compl. ¶¶ 28, 32; Answer ¶¶ 28, 32.)  They can assemble the elfa® system's

components in a variety of configurations to create a customized, modular storage unit.

(Am. Compl. ¶ 32; Answer ¶ 32.)

        There are two articles at issue: top tracks and hanging standards, both of which

are elongated rectangular strips of hardware made of epoxy-bonded steel.[3]  (Def.'s

Cross-MSJ, Ex. C, ECF No. 41-2 ("Ex. C Physical Sample"); Am. Compl. ¶ 26; Answer

¶ 26.)  A top track has top and bottom edges that are angled at about 45 degrees and a

flat back which consumers affix horizontally with anchors or screws to a vertical surface,

such as a door or wall.  (Am. Compl. ¶ 33; Answer ¶ 33.)  The top and bottom edges of

the top track protrude and respectively bend downward and upward to form the track's

---

[2] Defendant points out that the record only contains a patent for the top tracks and not
the hanging standards.  (*See* Oral Arg. Tr. at 42, ECF No. 63.)
[3] Defendant provided a physical sample of a top track and hanging standard as an
exhibit to its cross-motion.  (Def.'s Cross MSJ, Ex. C, ECF No. 41-2, physical sample
filed manually as ECF No. 42; Am. Compl. ¶ 26; Answer ¶ 26.)

upper and lower lips.  (Am. Compl. ¶ 34; Answer ¶ 34.)  A hanging standard consists of

three sides with an open back and flat front that has rows of evenly spaced slots which

allow the consumer to attach accessories or brackets for the accessories.  (Ex. C

Physical Sample.)  A hanging standard is suspended from a top track by means of

notches on the top end of the standard that slide into the top track's lower lip.  (Am.

Compl. ¶ 35; Answer ¶ 35.)  Once inserted into the lower lip of the top track, the

hanging standard suspends from the top track without additional hardware and remains

in place due to the "overhanging design of the upper lip" of the top track.  (Am. Compl.

¶¶ 35, 37; Answer ¶¶ 35, 37.)  A consumer may then attach additional elfa®

components, such as drawers, baskets, and shelves, to the hanging standards in

customized configurations.  (Am. Compl. ¶¶ 39-40; Answer ¶¶ 39-40.)  By design,

consumers may only use top tracks and hanging standards with other elfa® system

components.  (Am. Compl. ¶¶ 28, 31; Answer ¶¶ 28, 31.)  On their own, top tracks and

hanging standards do not organize or store anything.  (Am. Compl. ¶ 41; Answer ¶ 41.)

**II.     Procedural History**

This case involves two entries of merchandise,[4] consisting of top tracks and

hanging standards, which the Container Store imported through the Port of Houston,

Texas, in October 2007 and January 2008.  (Summons, ECF No. 1; Am. Compl. Ex. A.)

Customs originally liquidated the entries at issue under subheading 8302.41.60,

HTSUS, a provision for "[b]ase metal mountings, fittings and similar articles, and parts

---

[4] The entry numbers in this case are 125-1712897-6 and 125-1710359-9.  (Summons
Schedule.)

thereof: [s]uitable for buildings: [o]f iron or steel."  (Summons at 2.)  In December 2008,

the Container Store, the importer of record, timely filed protests challenging the

classification of its merchandise and seeking reclassification under subheading

9403.90.80, HTSUS, as parts of furniture.  (Summons Schedule; Am. Compl. ¶¶ 2-3;

Answer ¶¶ 2-3.)  In February 2009, Customs denied the protests and reaffirmed that the

top tracks and hanging standards fall under heading 8302, HTSUS.[5]  (*See* Summons;

*see also* Def.'s Cross-MSJ at 2.)  In response, in August 2009, the Container Store

commenced this action.

This case was then placed on the Reserve Calendar, pending the outcome of

another case filed in this court by the Container Store involving identical merchandise,

*Container Store v. United States*, 35 CIT __, 800 F. Supp. 2d 1329 (2011) (hereafter

"*Container Store I*").  (Def.'s Cross-MSJ at 2 n.4; Pl.'s MSJ at 7.)  In *Container Store I*,

the court followed a decision of the Court of Appeals for the Federal Circuit ("Federal

Circuit") regarding the classification of functionally similar merchandise—storeWALL

wall panels and locator tabs—however, those products were notably made of plastic.

35 CIT at __, 800 F. Supp. 2d at 1332-33 (citing *storeWALL, LLC v. United States*, 644

F.3d 1358 (Fed. Cir. 2011).  Applying the *storeWALL* analysis, the *Container Store I*

court held that the Container Store's elfa® top tracks and hanging standards were

properly classified under subheading 9403.90.80, HTSUS.  (*Id.* at 1331.)  Customs

---

[5] Customs denied the Container Store's protests based on a Customs ruling, HQ
966458, that was issued to the Container Store and classified its top tracks and hanging
standards in subheading 8302.41.60, HTSUS.  (Def.'s Cross MSJ at 2; HQ 966458
(2003).)

appealed the decision but then abandoned the appeal.  (Pl.'s MSJ at 1 (citing Answer

¶ 10).)

On December 10, 2013, the Container Store filed the Complaint in this action

(ECF No. 20), and on March 24, 2014, filed an Amended Complaint (ECF No. 27).  On

March 28, 2014, Defendant filed its answer.  (ECF No. 28.)  The Container Store moved

for summary judgment on October 29, 2014 (ECF No. 36), and the United States

responded with a cross-motion for summary judgment on February 9, 2015 (ECF No.

41).  Oral argument was held on September 10, 2015.  (ECF No. 61.)  Subsequent to

oral argument, the Container Store moved to supplement, in writing, its answer to

Question 1 contained in the Court's letter dated September 4, 2015 (ECF No. 60), and

both parties were given the opportunity to file supplemental briefs (Pl.'s Suppl. Resp. to

Question 1 ("Pl.'s Suppl. Br."), ECF No. 65; Def.'s Resp. to Pl.'s Suppl. Resp. to

Question 1 ("Def.'s Suppl. Br."), ECF No. 70).  The parties have fully briefed the issues

and the Court now rules on the parties' respective motions.

### JURISDICTION AND STANDARD OF REVIEW

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1581(a).  It may

grant summary judgment when "there is no genuine issue as to any material fact," and

"the moving party is entitled to judgment as a matter of law."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 247 (1986); USCIT R. 56(a).

The court's review of a classification decision involves two steps.  First, it must

determine the meaning of the relevant tariff provisions, which is a question of law.

*See Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998)

(citation omitted).  Second, it must determine whether the merchandise at issue falls

within a particular tariff provision as construed, which is a question of fact.  *Id.* (citation

omitted).  When no factual dispute exists regarding the merchandise, resolution of the

classification turns solely on the first step.  *See id.* at 1365-66; *see also Carl Zeiss, Inc.*

*v. United States*, 195 F.3d 1375, 1378 (Fed. Cir. 1999).

The court reviews classification cases *de novo*.  *See* 28 U.S.C. §§ 2640(a),

2643(b).  While the court accords deference to Customs classification rulings relative to

their '"power to persuade,'" *United States v. Mead Corp.*, 533 U.S. 218, 235 (2001)

(quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)), it has "an independent

responsibility to decide the legal issue of the proper meaning and scope of HTSUS

terms," *Warner-Lambert Co. v. United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005)

(citing *Rocknel Fastener, Inc. v. United States*, 267 F.3d 1354, 1358 (Fed. Cir. 2001)).

It is "the court's duty to find the <u>correct</u> result, by whatever procedure is best suited to

the case at hand."  *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984)

(emphasis in original).

### DISCUSSION

## I.   Parties' Proposed Tariff Classifications

Customs liquidated the subject imports under subheading 8302.41.60, HTSUS,

as base metal mountings suitable for buildings.[6]  (*See* Summons at 2.)  In this litigation,

---

[6] Defendant originally asserted in its cross-motion that subject merchandise is also classifiable in this tariff provision.  (Def.'s Cross-MSJ at 1.)  During the course of litigation, Defendant dropped its assertion that this tariff provision is proper.  (Def.'s Reply at 7.)  Pursuant to its duty under *Jarvis Clark*, the Court considered subheading

however, Defendant argues that the correct classification is subheading 8302.42.30,

HTSUS, which covers:

**8302**   Base metal mountings, fittings and similar articles suitable for furniture,
doors, staircases, windows, blinds, coachwork, saddlery, trunks, chests,
caskets or the like; base metal hat racks, hat-pegs, brackets and similar
fixtures; castors with mountings of base metal; automatic door closers of
base metal; and base metal parts thereof:

8302.42        Other, suitable for furniture:

8302.42.30   Of iron or steel, of aluminum or of zinc . . . . . . 3.9%

(Def.'s Cross-MSJ at 1 n.1; Def.'s Reply at 7).  Defendant's proposed classification

carries a 3.9% duty.

The Container Store alleges that both of Customs' proposed subheadings are

incorrect.  (Pl.'s MSJ at 6, 22-26.)  Rather, Plaintiff contends that its top tracks and

hanging standards are correctly classified in subheading 9403.90.80, HTSUS, which is

a duty-free provision, relying on *Container Store I*.  (*Id*. at 6-7, 15-21.)  Plaintiff's

proposed provision covers:

**9403**   Other furniture and parts thereof:

9403.90        Parts:

9403.90.80   Other: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   FREE

---

8302.41.60, HTSUS and found it inapplicable because it applies to goods suitable for
buildings rather than for furniture.

## II.    Application of *Container Store I* to Open Cases and Pending Protests

The Container Store urges the Court to direct Customs to apply the decisions in

*Container Store I* and *storeWALL* to "pending protests and open cases"[7] which allegedly

involve entries of identical merchandise.[8]  (Pl.'s MSJ at 1-2 n.1, 11-14.)  The Container

Store argues that *Container Store I* and *storeWALL* control this case and the related

pending cases because of the doctrine of *stare decisis*.  (*Id*. at 2.)  Plaintiff proffers four

reasons why the doctrine of *stare decisis* applies to this case:

> (1) there is a Federal Circuit interpretation of the subheading claimed by Plaintiff (*i.e.*, 9403.90.80, HTSUS);
> (2) there were no clear errors by the court in the prior case;
> (3) there has been no intervening change in the law since these decisions; and
> (4) the government's claims were fully litigated by the parties in the prior action.

*Id*.  The Container Store further purports that regulations compel Customs to follow

controlling judicial precedent.  (*Id*. at 11-12.)  The Container Store avers that, pursuant

to 19 C.F.R. § 152.16(a) and 19 C.F.R. § 177.10(d), Customs must issue a limiting

decision as to later-imported entries if it wishes to depart from judicial precedent.  (*Id*. at

11-13.)  The Container Store points out that Customs did not issue a limiting decision

following the court's decisions in *Container Store I* and *storeWALL* and, thus, the

Container Store insists that Customs acted arbitrarily and capriciously in failing to apply

---

[7] The open cases are court numbers: 05-00684 (Dec. 22, 2005), 06-00239 (July 21, 2006), 06-00404 (Nov. 6, 2006), 07-00197 (June 7, 2007), 07-00388 (Oct. 17, 2007), 07-00400 (Oct. 24, 2007), 08-00130 (Apr. 16, 2008), and 08-00249 (Aug. 14, 2008). (Pl.'s MSJ at 1-2 n.1.).  These cases have been removed from the Reserve Calendar since the commencement of this case and are currently assigned to another judge on the court.

[8] Neither this action nor *Container Store I* was designated as a test case, and none of the cases have been consolidated.

those judicial decisions to the open cases and pending protests of identical

merchandise.  (*Id*. at 1, 7, 11-14.)  Plaintiff asks the court to order Customs to classify,

in HTSUS heading 9403, not only the entries of identical merchandise at issue in this

case but also in related cases and pending protests, pursuant to *Container Store I* and

*storeWALL*.  (*Id*.)

### A.     The Summons Limits the Scope of the Court's Review

A summons is the initial pleading in a federal action.  *DaimlerChrysler Corp. v.*

*United States*, 442 F.3d 1313, 1317-18 (Fed. Cir. 2006).  "As a general matter, the initial

pleading in a federal court action serves two purposes: (1) [i]t establishes the court's

jurisdiction over the action; and (2) [i]t puts the adverse party on notice of the

commencement and subject-matter of the suit."  *Id*. at 1317 (citing 5 Charles Alan

Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1205, at 109, § 1215, at 173

(3d ed. 2004)).  In classification matters, a summons must identify the protest(s) at

issue in the litigation.[9]  *Id*. at 1320; *see also Kahrs Int'l, Inc. v. United States*, 33 CIT

1316, 1321-22, 645 F. Supp. 2d 1251, 1263 (2009).  As the Court of Appeals for the

Federal Circuit ("Federal Circuit") explained:

> The plain language of the pertinent statutes establishes that the Court of
> International Trade has jurisdiction only to review 'the denial of *a protest*,'
> and that each protest denial is the basis of a separate claim.  Thus, the
> filing of a protest is a jurisdictional requirement. . . .  Because each protest

---

[9] A summons need not include the protest number to commence a lawsuit if the protest
can be identified by other means, such as when the summons includes the relevant
entry number.  *DaimlerChrysler Corp. v. United States*, 28 CIT 2105, 2107, 350 F.
Supp. 2d 1339,1341 (2004) (holding that "if the entries were listed and it was possible
for the United States to relate the entry to the protest, . . . then jurisdiction would also
attach") (internal citation omitted), *aff'd*, 442 F.3d 1313 (Fed. Cir. 2006).

> forms the basis for a separate cause of action, the summons must
> establish the Court of International Trade's jurisdiction as to each protest.
> The essential jurisdictional fact—the denial of the protest—simply cannot
> be affirmatively alleged without specifically identifying each protest
> involved in the suit.

*DaimlerChrysler*, 442 F.3d at 1319 (citations omitted) (emphasis in original); *see also* 28

U.S.C. § 1581(a) (establishing the court's jurisdiction over "'[a] civil action contesting the

denial, in whole or in part, of *a protest*'") (emphasis added).  Thus, the protests listed in

a summons define the scope of the court's review in that case.[10]

The summons in this case identifies only two protests.[11]  (Summons Schedule.)

The summons does not include any of the protests in the other cases that the Container

Store asks the court to decide.  (*Id*.)  Further, this is neither a designated test case nor

have any other cases been stayed pending the outcome of this case.  Therefore, the

Court declines the Container Store's invitation to issue an order relating to protests in

any other case but the one at bar.  Denied protests that are not referenced in the

summons of this action constitute distinct causes of action that the Container Store

must adjudicate separately.

---

[10] *See Kahrs Int'l*, 33 CIT at 1321-22, 645 F. Supp. 2d at 1263 ("[T]his Court has
jurisdiction *only* over the entries that are the subject of this challenge to a denied
protest, pursuant to § 1581(a), as indicated in the summons filed with this action.")
(emphasis in original); *see also DaimlerChrysler Corp. v. United States*, 28 CIT at 2107,
350 F. Supp. 2d at 1341-42. ("But if there is no entry number on or attached to the
summons and no protest number on or attached to the summons at the time it is filed, the
general understanding that DaimlerChrysler intended to pursue this issue as to all
possibly affected entries will not suffice.").
[11] The protest numbers in this case are 5301-08-150014 and 5301-08-150015.  (*See*
Summons Schedule.)

**B.      The Court Lacks Subject Matter Jurisdiction Over Pending Protests**

The court has exclusive subject matter jurisdiction over all civil actions

commenced under § 515 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1515, to

contest protests denied by Customs.  *See* 28 U.S.C. § 1581(a).  Before a party may

initiate a civil action as to a denied protest, it must exhaust all administrative remedies,

as described in 28 U.S.C. § 2637.  That statute states, in relevant part:

> A civil action contesting the denial of a protest under section 515 of the
> Tariff Act of 1930 may be commenced in the Court of International Trade
> only if all liquidated duties, charges, or exactions have been paid at the
> time the action is commenced, except that a surety's obligation to pay
> such liquidated duties, charges, or exactions is limited to the sum of any
> bond related to each entry included in the denied protest.

28 U.S.C. § 2637(a).  Accordingly, "the denial of a protest" is a prerequisite for this

court's jurisdiction over classification of import entries.  28 U.S.C. § 2637(a); *see Am.*

*Air Parcel Forwarding Co. v. United States*, 718 F.2d 1546, 1550 (Fed. Cir. 1983)

("[T]he statutory requirements that a protest must be filed . . . or that duties must be paid

before commencing a civil action involving the protest [may not be waived]."); *Dexter v.*

*United States*, 78 Cust. Ct. 179, 181 (1977) ("[T]his court has no jurisdiction" over any

entries "[u]ntil the entries are liquidated and [the] protests [are] denied.").

The Container Store asks that the Court order Customs to classify, under HTSUS

heading 9403, entries of top tracks and hanging standards in all pending protests.  (Pl.'s

MSJ at 1-2 & n.1, 11-14.)  Because these protests are pending, Customs has yet to

deny them.  Defendant indicates that all pending protests dealing with top tracks and

hanging standards have been suspended and will remain so for the duration of this

litigation, as is Customs' practice.  (Def.'s Cross-MSJ at 2 n.4; Pl.'s MSJ at 7.)

Accordingly, the Court cannot order Customs to classify pending protests of elfa® top

tracks and hanging standards under any tariff provision because it lacks jurisdiction over

protests that have not been denied.

### C.    Customs Did Not Arbitrarily and Capriciously Ignore Regulations

Pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), a court may

hold invalid agency actions "where they are arbitrary, capricious, an abuse of discretion,

or otherwise not in accordance with law."  "Under this standard, it is clear that an

agency's determination cannot be upheld where it fails to acknowledge applicable law."

*Former Employees of Murray Engineering, Inc. v. Chao*, 28 CIT 1873, 1875, 358 F.

Supp. 2d 1269, 1272 (2004) (citations omitted).  Thus, the court may not affirm an

agency determination that is not in accord with the agency's own rules or regulations.

*SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

In relevant part, Customs regulation 19 C.F.R. § 152.16, states:

> The following procedures apply to changes in classification made by
> decision of either the United States Court of International Trade or the
> United States Court of Appeals for the Federal Circuit, except to the extent
> otherwise provided in a ruling published in the Customs Bulletin pursuant
> to § 177.10(a) of this chapter:
> . . . .
> (e) Other decisions adverse to Government. Unless the Commissioner of
> Customs otherwise directs, the principles of any court decision adverse to
> the Government . . . shall be applied to unliquidated entries and protested
> entries which have not been denied in whole or in part and in which the
> same issue is involved as soon as the time within which an application for
> a rehearing or review may be filed has expired without such application
> having been made.

The Container Store argues that Customs acted arbitrarily and capriciously in

failing to follow 19 C.F.R § 152.16(e) after this court's decision in *Container Store I* and

the Federal Circuit's decision in *storeWALL*.  The Container Store asserts that this

regulation required Customs to classify entries of elfa® top tracks and hanging

standards at issue in this case under HTSUS heading 9403, unless Customs issued a

limiting decision pursuant to 19 C.F.R. § 177.10(d), which the Container Store avers

Customs failed to do.  (Pl.'s MSJ at 1, 7, 11-13.)  On that basis, the Container Store

requests that the court order Customs to treat the entries at issue in this case

consistently with its regulations.[12]  (*Id.*)

Preliminarily, the Court notes that the Container Store confuses the subsection of

19 C.F.R. § 177.10 to which 19 C.F.R. § 152.16 refers.  The chapeau to 19 C.F.R.

§ 152.16 refers to 19 C.F.R. § 177.10(a), not 19 C.F.R. § 177.10(d).  Pursuant to

19 C.F.R. § 177.10(d), Customs may issue limiting rulings with respect to certain judicial

decisions.[13]  In contrast, 19 C.F.R. § 177.10(a) requires Customs to publish in the

Customs Bulletin interpretive decisions that Customs makes relating to prospective,

---

[12] The Container Store also asks the court to find that Customs acted arbitrarily and
capriciously in failing to classify entries of identical merchandise at issue in pending
protests and open cases under HTSUS 9403 consistent with *Container Store I* and
*storeWALL*.  As already noted, the Court lacks subject matter jurisdiction to rule on
pending protests and is limited to deciding matters pertaining to the protests listed in the
summons commencing the case at bar.  *See supra.*  The Court therefore expresses no
opinion as to Customs' actions with respect to pending protests and open cases.
[13] 19 C.F.R. § 177.10(d), states, in relevant part:
     Limiting rulings. A published ruling may limit the application of a
     court decision to the specific article under litigation, or to an article
     of a specific class or kind of such merchandise, or to the particular
     circumstances or entries which were the subject of the litigation.

current, or completed transactions under the Tariff Act of 1930.[14]  The Container Store

does not address the relevance of 19 C.F.R. § 177.10(a) to this case.

The Court need not parse 19 C.F.R. § 177.10's subsections, however.  The

Container Store's argument centers on 19 C.F.R. § 152.16(e), which allegedly requires

Customs to apply adverse judicial decisions with limited exceptions.  Without reaching

whether Customs needed to issue a limiting decision or interpretative ruling pursuant to

19 C.F.R. § 177.10, the Court finds that 19 C.F.R. § 152.16(e) did not compel Customs

to apply *Container Store I* or *storeWALL* to the protests at issue in this case.  The

regulation requires Customs to apply adverse judicial decisions only "to unliquidated

entries and protested entries *which have not been denied* in whole or in part."  19

C.F.R. § 152.16(e) (emphasis added).  Customs denied the two protests at issue in this

case on February 25, 2009.  (Summons Schedule.)  The Federal Circuit issued its

decision in *storeWALL* on March 31, 2011, *see generally* 644 F.3d 1358, and this Court

issued *Container Store I* on October 26, 2011, *see generally* 35 CIT __, 800 F. Supp. 2d

1329.  Thus, Customs had denied the protests more than two years before the

decisions in *Container Store I* and *storeWALL*.  Consequently, Customs did not act

arbitrarily and capriciously in failing to follow 19 C.F.R. § 152.16(e) with respect to the

---

[14] 19 C.F.R. § 177.10(a) states:

> Generally. Within 90 days after issuing any interpretive decision under the
> Tariff Act of 1930, as amended, relating to any Customs transaction
> (prospective, current, or completed), the Customs Service shall publish
> the decision in the Customs Bulletin or otherwise make it available for
> public inspection. For purposes of this paragraph an interpretive decision
> includes any ruling letter, internal advice memorandum, or protest review
> decision.

protests at issue in this case because Customs' denial of the protests predates the

decisions in *storeWALL* and *Container Store I* and, therefore, the regulation does not

apply.

   **III.    Doctrine of *Stare Decisis***

       "*Stare decisis* means 'not to disturb what is settled.'"  *Warner-Lambert Co. v.*

*United States*, 32 CIT 222, 226, 545 F. Supp. 2d 1345, 1349 (2008) (citation omitted).

The doctrine of *stare decisis* "in essence 'makes each judgment a statement of the law,

or precedent, binding in future cases before the same court or another court owing

obedience to its decision.'"  *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1570 (Fed.

Cir. 1993) (internal quotation and citation omitted); *see also R.J. Saunders & Co. v.*

*United States*, 45 C.C.P.A. 87, 89 (1958) ("[I]t is not the province of a lower court to set

aside the ruling of an appellate court.").  The doctrine of *stare decisis* "'protects the

legitimate expectations of those who live under the law' and prevents 'an arbitrary

discretion in the courts.'"  *Deckers Corp. v. United States*, 752 F.3d 949, 955 (Fed. Cir.

2014) (quoting *Hubbard v. United States*, 514 U.S. 695, 716 (1995) (citation omitted)).

   **A.    Parties' Contentions**

       The Container Store contends that the doctrine of *stare decisis* mandates that

the Court classify the subject imports under heading 9403, HTSUS, because prior

decisions of this court and the Federal Circuit create binding authority on the issue.

(Pl.'s MSJ at 2.)  The Container Store urges that this court's result in *Container Store I*

and the Federal Circuit's decision in *storeWALL* are controlling precedent on the

classification of its elfa® top tracks and hanging standards in this case.  (*Id.* at 9-11.)

Defendant responds that the doctrine of *stare decisis* does not compel the Court

to follow *Container Store I* because decisions of trial court judges generally do not bind

other trial court judges.  (Def.'s Cross-MSJ at 6-8.)  Defendant further explains that the

Federal Circuit's conclusion in *storeWALL* does not govern the classification of the

subject merchandise at issue in the instant case because the legal issues differ.  (*Id*. at

24.)  Specifically, the *storeWALL* court considered different competing headings.  (*Id*. at

23.)  Defendant argues that here "proper classification . . . is dependent on the analysis

of competing provisions that have corresponding mutually exclusive legal notes."  (*Id*. at

23-24.)  Defendant alternatively argues that, even if a prior decision is binding on the

Court, the United States is entitled to submit evidence that the decision was clearly

erroneous.  (*See id*. at 4, 7-8.)

      **B.**    ***Stare Decisis* and *StoreWALL***

Federal Circuit decisions are binding on this court pursuant to the doctrine of

*stare decisis*.  In classification cases, the Federal Circuit has stated that "[a]lthough an

importer is free to challenge anew a previous classification of merchandise . . ., we have

decided that the importer is burdened by the doctrine of *stare decisis*."  *Avenues in*

*Leather, Inc. v. United States*, 423 F.3d 1326, 1331 (Fed. Cir. 2005) (internal quotation

and citation omitted).  The Court is bound by the Federal Circuit's legal determinations

as to questions of law, and specifically as to interpretation of tariff provisions that are

applicable.  *Id*. ("[T]he doctrine of *stare decisis* applies to only legal issues and not

issues of fact.").  Accordingly, the Court will follow the *storeWALL* court's legal

construction of the heading 9403, HTSUS, which is one of the headings at issue in this case, to the extent that it is applicable, pursuant to the doctrine of *stare decisis.*

The doctrine of *stare decisis,* however, only applies if the legal issues are the same.  Thus, the Federal Circuit's *storeWALL* decision is not dispositive as to this case, because there are factual and legal distinctions between *storeWALL* and this case. Defendant asserted during oral argument that "there are a lot of issues that [were] raised in all of these notes that did not arise in *storeWALL*, or were not argued in *storeWALL*."  (Oral Arg. Tr. at 38, ECF No. 63.)  These notes were not at issue in *storeWALL* because, as previously noted, the subject merchandise in *storeWALL* was made of plastic, while the subject merchandise in this case is made of metal. Accordingly, the tariff provisions at issue in *storeWALL*, and the interactions of the tariff provisions with each other, via the section and chapter notes, differ from the provisions considered in this case.

Specifically, Section XV, which covers "base metals and articles of base metal," and the headings in that section, such as heading 8302, which covers "base metal mountings, fittings and similar articles suitable for furniture" were not considered by the *storeWALL* court because that section and its headings covering base metals were not applicable to the plastic merchandise at issue in *storeWALL*.  Furthermore, in construing heading 9403 HTSUS, the Federal Circuit did not consider the relevance of the exclusion of "parts of general use" as defined in Note 2(c) to Section XV, pursuant to Chapter 94, Note 1(d), because, as noted above, it was considering an item of plastic, rather than one of base metal.

The *storeWALL* court considered two basket provisions, HTSUS heading 9403, a provision for furniture and parts thereof, and HTSUS heading 3926, a broad basket provision for "[o]ther articles of plastics and articles of other materials of headings 3901 to 3914." The language of heading 3926, HTSUS, explicitly indicates that it only covered articles of plastic not specified elsewhere. On appeal, the *storeWALL* court determined that the subject imports did not fall under HTSUS heading 3926 because the subject imports were specified elsewhere, *i.e.*, under HTSUS heading 9403, as parts of unit furniture.

The Federal Circuit's construction of heading 3926, HTSUS, in *storeWALL* is not relevant to the subject merchandise at issue. Since the instant subject merchandise is made of base metal, tariff provisions for plastic articles, such as heading 3926, HTSUS, are not applicable in the instant case. Moreover, Defendant's proposed HTSUS heading 8302 in this case is not a broad basket provision as was the case with the defendant's proposed HTSUS heading 3926 in *storeWALL*. Finally, and perhaps most relevant, is that, as discussed in more detail below, there are section and chapter notes that speak to the interactions between HTSUS headings 8302 and 9403 that were not relevant to, and, therefore, not considered by, the Federal Circuit in *storeWALL*. Accordingly, *storeWALL* does not bind the Court in this case regarding the proper classification of elfa® top tracks and hanging standards made of epoxy-bonded steel.

### C.   *Stare Decisis* and *Container Store I*

The law is well-settled that trial courts, such as this court, are not bound by the decisions of other trial court judges. *Algoma Steel Corp. v. United States*, 865 F.2d 240

(Fed. Cir. 1989) (holding specifically that a judge at the CIT is not bound by another

judge's decision at the CIT); *Carpenter Tech. Corp. v. United States*, 33 CIT 1721,

1729, 662 F. Supp. 2d 1337,1343 (2009) (noting that this court is not bound by a

decision of another judge of the same court).  The court's duty is to find the *correct*

result, by whatever procedure is best suited to the case at hand.  *Jarvis Clark*, 733 F.2d

at 878.  Accordingly, the doctrine of *stare decisis* does not compel the Court to follow

the analysis in *Container Store I*, particularly when that decision did not address the

same issues and legal arguments raised herein; including, specifically, whether the

subject merchandise meets the definition of parts of general use.  In this case, the Court

arrives at a different conclusion than the one achieved in *Container Store I* based upon

an analysis of the definition of parts of general use and the other statutory exclusionary

notes.

## IV.      General Rules of Interpretation ("GRI")

The Court must assess whether the elfa® top tracks and hanging standards

properly fall within the scope of HTSUS headings 9403 or 8302.  The Container Store

urges that the correct classification for its product is heading 9403, HTSUS, as "[o]ther

furniture and parts thereof," based on the plain language of the heading, the relevant

section, chapter, and explanatory notes, and the construction of the heading that the

Federal Circuit adopted in *storeWALL*.  (Pl.'s MSJ at 15-17.)  Plaintiff further contends

that the subject imports fall outside the scope of heading 8302, HTSUS, because they

are essential components of the elfa® system and, therefore, are not parts of general

use, as that heading contemplates.  (*Id*. at 22.)

The United States concedes that elfa® top tracks and hanging standards are

*prima facie* classifiable under heading 9403.  (Def.'s Cross-MSJ at 12.)  Defendant

contends, however, that they are also *prima facie* classifiable under heading 8302,

HTSUS, as "base metal mountings, fittings and similar articles suitable for furniture."

(*Id*. at 12-15 & n.7.)  The United States argues, however, that the Court must classify

the goods under the more specific of the alternative headings.  (*Id*. at 15-16.)  The

United States avers that heading 8203 is more specific than heading 9403.  (*Id*. at 9-11,

15-16.)  Further, Defendant explains Note 1(d) to Chapter 94[15] excludes the subject

imports from heading 9403.  (*Id*. at 16.)

A.      GRI Application

The General Rules of Interpretation ("GRIs") govern classifications and are

applied in numerical order.  *N. Am. Processing Co. v. United States*, 236 F.3d 695, 698

(Fed. Cir. 2001).  Section and chapter notes "are not optional interpretive rules, but are

statutory law, codified at 19 U.S.C. § 1202."  *Avenues in Leather,* 423 F.3d. at 1333

(internal citation omitted).  While not statutory law, the ENs "may be consulted for

guidance and are generally indicative of the proper interpretation of the various HTSUS

_____

[15] Note 1(d) to Chapter 94 states, "This chapter does not cover . . . . (d) parts of general use as defined in note 2 to section XV, of base metal (section XV) . . . ."  Note 2 to Section XV states that "[t]hroughout the tariff schedule, the expression 'parts of general use' means . . . [a]rticles of . . . heading 8302."

provisions." *Millenium Lumber Dist. Ltd. v. United States*, 558 F.3d 1326, 1329 (Fed.

Cir. 2009) (quoting *N. Am. Processing*, 236 F.3d at 698).

"Under GRI 1, the Court must determine the appropriate classification 'according

to the terms of the headings and any relative section or chapter notes' . . . [with] terms

of the HTSUS . . . construed . . . to their common commercial meaning." *Id*. at 1328-29.

If the application of GRI 1 provides the proper classification, the inquiry ends there.

When goods "are *prima facie* classifiable under two or more headings or subheadings of

HTSUS" under a GRI 1 analysis, then the court must turn towards GRI 3 to resolve the

classification. *La Crosse Tech., Ltd. v. United States*, 723 F.3d 1353, 1358 (Fed. Cir.

2013) (quoting *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1365 (Fed. Cir.

2011)). GRI 3(a),[16] known as the rule of specificity, dictates that an article *prima facie*

classifiable in two or more headings should be classified under the heading that

provides "the most specific description of the goods." *CamelBak*, 649 F.3d at 1365;

*Riddell, Inc. v. United States*, 754 F.3d 1375, 1380 (Fed. Cir. 2014) (stating when "the

provisional conclusion from applying GRI 1" is that the subject imports are "'*prima facie*

classifiable under two or more headings,' we turn [ ] to . . . GRI 3(a)'s 'rule of

specificity'") (internal quotation and citation omitted).

---

[16] GRI 3(a) states:
> The heading which provides the most specific description shall be
> preferred to headings providing a more general description. However,
> when two or more headings each refer to part only of the materials or
> substances contained in mixed or composite goods or to part only of the
> items in a set put up for retail sale, those headings are to be regarded as
> equally specific in relation to those goods, even if one of them gives a
> more complete or precise description of the goods.

**B.    Statutory Law**

The subject merchandise at issue is the Container Store's elfa® top tracks and hanging standards, two components of its patented elfa® system.  (Am. Compl. ¶¶ 5); Answer ¶¶ 5.)  These top tracks and hanging standards "may or may not be imported together."  (Pl.'s MSJ at 4, ¶ 12.)  The Court now turns to the two applicable headings proposed by the parties.

Relying on the relevant section and chapter notes, Defendant contends that the headings are "mutually exclusive," such that merchandise classifiable in one heading is not classifiable in the other.  (Def.'s Cross-MSJ at 4, 7, 9-11; Def.'s Reply at 8.)  Defendant argues that because the subject imports are *prima facie* classifiable under both headings, the court must resort to GRI 3(a)'s rule of specificity to determine that the heading 8302, HTSUS, more specifically describes the subject merchandise.  (Def.'s Cross-MSJ at 11, 15-16.)  The Container Store disagrees with Defendant that the subject imports are classifiable under heading 8302, HTSUS.  (*See generally* Pl.'s MSJ.)  Rather, the Container Store urges that the plain language of heading 8302 and related notes instruct that this heading covers only parts of general use, and not products like elfa® top tracks and hanging standards, which are essential components of the complete article of furniture.  (Pl.'s MSJ at 15-18.)

**1.    Relevant Section, Chapter and Headings**

The first relevant section is Section XV, which covers "Base Metals and Articles of Base Metal."  Section XV includes Chapter 83, which covers "miscellaneous articles of base metal."  Chapter 83 includes heading 8302, which covers "base metal

mountings, fittings and similar articles suitable for furniture."  The second relevant

section is Section XX, which covers "Miscellaneous Manufactured Articles."  Section XX

includes Chapter 94, which covers, among other things, "furniture, bedding, mattresses,

mattress supports . . . illuminated signs, illuminated nameplates and the like;

prefabricated buildings."  Chapter 94 includes heading 9403, which covers "[o]ther

furniture and parts thereof."

Pursuant to GRI 1, the Court first considers the terms of the proposed headings.

Terms are construed based on their common and commercial meaning.  *Millenium*

*Lumber Dist.*, 558 F.3d at 1328-29.  Taking the headings in numerical order, HTSUS

heading 8302 includes "[b]ase metal mountings, fittings and similar articles suitable for

furniture."  Note 3 to Section XV defines "base metals" as, *inter alia*, "iron and steel."

The top tracks and hanging standards are comprised of epoxy-bonded steel and are,

therefore, made of "base metal" for purposes of heading 8302.  (*See* Am. Compl. ¶ 27;

Answer ¶ 27).  The subject merchandise also qualifies as "mountings, fittings and

similar articles suitable for furniture" applying the common commercial definitions.  The

common meaning of "mounting" is "a frame or support that holds something."[17]  The

common meaning of "fitting" is "a small often standardized part."[18]  These terms are met

because elfa® top tracks and hanging standards serve as the frame or support structure

in a complete elfa® system.  (Am. Compl. ¶¶ 30, 39-40; Answer ¶¶ 30, 39-40.)  The

---

[17] *Available at* http://www.merriam-webster.com/dictionary/mounting (last visited
January 14, 2016).
[18] *Available at* http://www.merriam-webster.com/dictionary/fitting (last visited January
14, 2016).

subject imports are also "suitable for furniture."  The word "suitable" means "adapted to

a use or purpose."[19]  The Court finds that the elfa® top tracks and hanging standards

can fit within the terms of heading 8302, HTSUS.

The Court next considers the terms of HTSUS heading 9403, which

encompasses "[o]ther furniture and parts thereof."  The HTSUS does not define the

term furniture, but the Court uses the definition of "furniture" from the Federal Circuit,

which included "unit furniture" as a type of "furniture."  *storeWALL,* 644 F.3d at 1363

(citing *storeWALL, LLC v. United States*, 33 CIT 1791, __, 675 F. Supp. 2d 1200, 1204

(2009)).  The Federal Circuit found the storeWALL "system's versatility and adaptability"

to be "characteristics that are the hallmark of unit furniture."  *Id*. at 1364.  The Container

Store's elfa® top racks and hanging standards are functionally equivalent to the

storeWALL system. [20]  Following *storeWALL*'s definition of unit furniture to construe the

terms in heading 9403, HTSUS, the Court finds that the elfa® top tracks and hanging

standards can also fit within the terms of heading 9403, HTSUS.

A GRI 1 analysis, however, requires the court to construe the terms of the

headings in light of the relative section and chapter notes, and also consult the ENs, as

---

[19] *Available at* http://www.merriam-webster.com/dictionary/suitable (last visited January
14, 2016).

[20] The Court recognizes that elfa® top tracks and hanging standards are designed to be
used with the elfa® system (Am. Compl. ¶¶ 28, 31; Answer ¶¶ 28, 31), which, when
complete, would appear to meet the court's definition of "unit furniture" in *storeWALL*.
644 F.3d at 1364.  HTSUS heading 8302 contemplates that its articles are suitable for
furniture and, therefore, the fact that the merchandise in question may be parts of unit
furniture is consistent with the *storeWAL*L analysis of unit furniture.  Further, the subject
merchandise at issue is only the two parts, top tracks and hanging standards, and not
an entire elfa® system.

appropriate, to ascertain the scope of the provisions.  These section and chapter notes, which also are statutory law, may determine if the subject merchandise is properly classifiable in both parties' proposed headings.

**2.      Relevant Section and Chapter Notes**

The Court must consider, and analyze the interplay among, the relevant provisions of statutory law.  The Court first looks at the sections and then the chapters in which the respective proposed headings fall and considers relevant notes, if any, which are binding statutory law.  Section XV has notes that provide statutory law pertinent to this case.  Section XV has two possible relevant section notes—Note 1(k) and Note 2(c).  Section XX does not have any section notes, however, Chapter 94 has two relevant chapter notes—Note 1(d) and Note 2.[21]  This case turns on the interplay among these section and chapter notes.[22]

***a.      Section XV notes***

Note 1(k) to Section XV states that the section "does not cover . . . (k) Articles of chapter 94 (for example, furniture)."  In its supplemental brief, the Container Store focuses on the parenthetical "for example" in Note 1(k) and explains that "for example"

---

[21] Again, the *storeWALL* court did not consider the relationship between Chapter 94 and Chapter 83 and the relevant Section XV and Chapter 83 notes because the subject merchandise in that case was plastic and these provisions apply to articles and parts of base metal.

[22] The Court also considered the Note 1 to Chapter 83, which provides that "[f]or the purposes of this chapter, parts of base metal are to be classified with their parent articles." On its face, Note 1 is specific to Chapter 83, and classification in a heading within Chapter 83; therefore, it does not help the Court resolve a classification issue between Chapter 83 and Chapter 94.

is "illustrative" and the note "simply lists exemplars."  (Pl.'s Suppl. Br. at 1-2.)  Plaintiff

asserts that Note 1(k) "is not limited to the named exemplars, but covers all articles of

Chapter 94."  (*Id.* at 2.)  Defendant counters that "the purpose of Note 1(k) is to exclude

from Section XV a class of goods that are classifiable in Chapter 94, HTSUS" and

instead focuses on the term "articles" in Note 1(k).  (Def.'s Suppl. Br. at 3.)  Defendant

asserts that "articles" does not include a reference to "parts."  (*Id.*)  Note 2(c) explains

that, "[t]hroughout the tariff schedule, the expression '<u>parts of general use</u>' means: . . .

(c) Articles of heading . . . 8302."

 The two relevant notes in Section XV must be read together and reconciled to

the extent they appear to contradict each other.  Note 1(k) states that Section XV does

not cover articles of Chapter 94, "for example, furniture."  The phrase "for example" is

illustrative, as the Container Store contends.  While Defendant argues that only

complete articles, such as furniture of Chapter 94, are covered by this note, the Court

need not reach this issue.  Note 2(c) defines "parts of general use" to include those

articles specifically identified in heading 8302, HTSUS, and, as discussed below, such

parts are expressly excluded from Chapter 94 by Note 1(d) thereto.  Thus Note 1(k) has

no bearing on the classification of the subject imports, because the top tracks and

hanging standards are parts of general use as described in Note 2(c) (and, as

discussed immediately below, Note 1(d) to Chapter 94).

### b. *Chapter 94 notes*

 The Court's reading of the Section XV notes is reinforced by the notes to Chapter

94.  Note 1(d) to Chapter 94 states that "[t]his chapter does not cover . . . (d) Parts of

general use as defined in note 2 to section XV," *i.e.*, the "[a]rticles of heading . . . 8302."

Note 2 to Chapter 94 provides:

> The articles (other than parts) referred to in heading[ ] . . . 9403 are to be classified in [that] heading[ ] only if they are designed for placing on the floor or ground.
>
> The following are, however, to be classified in the above-mentioned headings even if they are designed to be hung, to be fixed to the wall or to stand one on the other:
>
> (a) Cupboards, bookcases, other shelved furniture (including single shelves presented with supports for fixing them to the wall) and unit furniture.

Reading these chapter notes together, Chapter 94 covers articles that are designed to be placed on the floor, and certain other articles, such as unit furniture, that are designed to be hung on the wall.  Chapter 94, however, does not cover parts, as defined in Note 2 to Section XV (*i.e.*, parts of general use).  Therefore, the Court concludes that Chapter 94 Note 1(d) provides that base metal "parts of general use" are not included in Chapter 94.

Additional U.S. Rules of Interpretation ("ARI") 1(c) to the GRIs supports this conclusion.  This is an interpretative rule, which provides:

> 1. In the absence of special language or context which otherwise requires—
>    . . .
>    (c) a provision for parts of an article covers products solely or principally used as part of such articles but a provision for "parts" or "parts and accessories" shall not prevail over a specific provision for such part or accessory.

Plaintiff recites and relies on only the first half of ARI 1(c)—"a provision for parts of an article covers products solely or principally used as part of such articles."  (Pl.'s MSJ at

19.)  The ARI, however, must be read in its entirety.  The second half of the ARI is

applicable and its application is consistent with the Court's reconciliation of the notes to

Chapters 83 and 94—"a provision for 'parts' or 'parts and accessories' shall not prevail

over a specific provision for such part or accessory."  Applying ARI 1(c) to the headings

at issue, the specific provision of "base metal mountings, fittings and similar articles

suitable for furniture" in heading 8302, HTSUS, prevails over the general provision for

"parts of furniture" in heading 9403, HTSUS.

### c.      Interplay between Section XV and Chapter 94 notes

The Court reads the relevant section and chapter notes together, in order to

avoid creating contradictions in the statutory language where none is necessary.  In so

doing, Chapter 94 Note 1(d) reinforces Section XV Note 2(c).  Chapter 94 Note 1(d)

excludes parts of general use from Chapter 94, while Section XV Note 2(c) specifically

places parts of general use into heading 8302, HTSUS.  The interplay between the

section and chapter notes dictates that if the subject merchandise fits the definition of a

part of general use, then it stays in heading 8302 even if it is a part of furniture or unit

furniture.  Further, heading 8302's "suitable for furniture" language actually

contemplates that its articles may be used as parts of furniture.  Therefore,  the Court

finds that the Container Store's top tracks and hanging standards fit the definition of a

part of general use and are classified in heading 8302, HTSUS.

The Court is unpersuaded by the Container Store's arguments that its top tracks

and hanging standards cannot be considered "parts of general use" because they are

designed for use in its elfa® system.  In making these arguments, the Container Store

appears to rely on a common usage of the term "general use," suggesting that the part

in question must have multiple uses.  In this instance, the phrase "parts of general use"

is expressly defined, for purposes of the tariff schedule, in Note 2(c) to Section XV, and

it is specifically listed *eo nomine* in heading 8302, HSTUS.  Thus, the Court considers

this to be a defined, short-hand term of reference for articles of heading 8302, HTSUS,

without regard to type or number of uses of the article.  *Lonza, Inc. v. U.S.*, 46 F.3d

1098, 1106 (Fed. Cir. 1995) ("where a term is defined by statute, the court need not

undertake a common-meaning inquiry, for the statutory definition is controlling") (internal

citation omitted).  Because the top tracks and hanging standards in question are

covered by the terms of heading 8302, HTSUS, they are "parts of general use" even if

they are designed for use in a particular furniture system.[23]

### C.   Explanatory Notes

While not binding, the Explanatory Notes ("EN") may provide interpretative

guidance in a classification analysis.  The Court considers the ENs as guidance insofar

as they are germane and do not conflict with the statutory law.[24]  To the extent that the

relevant ENs appear to contradict statutory provisions, the Court disregards the ENs.

---

[23] While the parties disagree about whether these top tracks and hanging standards are parts of general use, this disagreement is a legal conclusion regarding the interpretation and application of Section XV Note 2(c), not a genuine issue of material fact regarding the physical property of the subject imports or their function.

[24] The Court looked carefully at the ENs in their entirety and discussed them with the parties, but in the end, the Court finds the ENs of limited assistance.  Further, the Court finds that some parts of the ENs are inconsistent with the section and chapter notes. Thus, the Court relies on the ENs only insofar as they are pertinent, helpful, and do not contradict statutory law.

To the extent the relevant ENs appear to contradict each other, the Court considers and assigns appropriate weight to their persuasive value.

The first relevant EN is the EN to Section XV, which provides guidance as to how to classify "parts of articles" that are "presented separately."  Section XV EN "(C) Parts of Articles" provides:

> [p]arts of general use (as defined in Note 2 to this Section) presented separately are **not** considered as parts of articles, but are classified in the headings of this Section appropriate to them.  This would apply, for example, in the case of bolts specialized for central heating radiators or springs specialized for motor cars.  The bolts would be classified in heading 73.18 (as bolts) and not in heading 73.22 (as parts of central heating radiators).  The springs would be classified in heading 73.20 (as springs) and not in heading 87.08 (as parts of motor vehicles).

This EN thus explains that "parts of general use . . . presented separately are **not**" to be classified with the articles to which they belong.  Rather, parts of general use are to be classified in their appropriate *eo nomine* provision.  This rule stands even if the parts are "specialized" for particular types of goods, such as springs for motor cars or bolts for central heating radiators.  Reading Note 2 to Section XV, which defines the parts of heading 8302 as "parts of general use," together with this section EN, supports a finding that separately presented parts of HTSUS heading 8302 are properly classified in that heading rather than as parts of the article for which they may be intended.

The EN to Chapter 94,[25] by contrast, specifies that "[a]rticles of furniture presented **disassembled** or **unassembled** are to be treated as assembled articles of furniture, **provided** the parts are presented together" (emphasis in original).  The

---

[25] Section XX has no explanatory notes.

operative term in this EN is "provided," as indicated by the original emphasis.  Thus, the

Chapter 94 EN also supports classifying these top tracks and hanging standards in

HTSUS heading 8302.  As the Container Store indicated, the "top tracks and hanging

standards may or may not be imported together, and may or may not be imported with

other elfa® components."  (Pl.'s MSJ at 4, ¶ 12.)  In this case, the top tracks and

handing standards were not presented as part of a set used to create any particular

elfa® system.  Thus, the EN to Chapter 94 does not support classifying the

merchandise at issue in Chapter 94.

        The Court next turns to the ENs related to headings 8302 and 9403, HSTUS, for

an interpretation of the headings' respective scopes.  The EN to heading 8302, HTSUS,

also provides guidance about general classes of goods, even when these goods are

designed for particular uses:

> This heading covers general purpose classes of base metal accessory
> fittings and mountings such as are used largely on furniture . . . . Goods
> within such general classes remain in this heading even if they are
> designed for particular uses (e.g., door handles or hinges for
> automobiles).  The heading **does not**, however, **extend** to goods forming
> an essential part of the structure of the article, such as window frames or
> swivel devices for revolving chairs. (Emphasis in original.)

This EN suggests that general purpose classes of base metal mountings included in

heading 8302, HTSUS, are not removed from the class merely because they are

designed for a particular use.  The Container Store asserts that elfa® top tracks and

hanging standards are designed to be used with the elfa® system and are an essential

part of the structure of such a system.  (Am. Compl. ¶¶ 28, 31; Answer ¶¶ 28, 31.)

Applying EN to heading 8302, HTSUS, to the case at bar, the fact that elfa® top tracks and hanging standards were designed only to work with the elfa® system does not remove these top tracks and hanging standards from the general class of base metal mountings that are used largely on furniture.  Although these top tracks and hanging standards are designed for use with elfa® systems, they fall within the general class of mountings, fittings and similar articles suitable for furniture based on the terms of the headings and the Court's analysis of the relevant section and chapter notes.

The EN to heading 9403, HTSUS, states that this heading "covers furniture and parts thereof not covered by previous headings."  This EN supports reading heading 9403 as covering furniture parts that are not otherwise covered by a lower numbered heading.  Heading 8302, HTSUS, is an applicable lower numbered heading and, as discussed herein, covers the subject top tracks and hanging standards.

### D.    Proper Classification

The proper classification of top tracks and hanging standards may be decided pursuant to GRI (1).[26]  Heading 8302, HTSUS, covers all base metal mountings, fittings, and similar articles suitable for furniture, specifically including articles of heading 8302 that are parts of general use, even if they are designed to be used in a patented shelving system.  Heading 9403, HTSUS, covers parts of furniture but specifically excludes parts of general use, and also excludes disassembled parts that are not presented together.  Upon consideration of the terms of the headings, relevant section

---

[26] The case will be decided under a GRI 1 analysis and therefore the Court need not reach a specificity analysis under GRI 3(a).

and chapter notes, and germane explanatory notes, the Court finds that the elfa® top

tracks and hanging standards are classifiable in heading 8302, HTSUS, the appropriate

*eo nomine* provision for base metal mountings, fittings, and similar articles suitable for

furniture.  Accordingly, the subject merchandise is not classifiable in heading 9403,

HTSUS, because they are excluded by the chapter notes as parts of general use.

    After reaching the proper heading, the Court determines the proper subheading.

*Bauer Nike Hockey USA, Inc. v. United States*, 393 F.3d 1246, 1250 (Fed. Cir. 2004)

("The court must first look to headings, then subheadings, to determine proper

classification.").  As noted *supra*, subheading 8302.41, HTSUS, applies to base metal

articles suitable for buildings, which is inapplicable to the subject imports.  Subheading

8302.42, HTSUS, applies to base metal articles suitable for furniture, which is

applicable.  Finally, the proper eight digit subheading is 8302.42.30, HTSUS, which

applies to mountings, fittings, and similar articles suitable for furniture made of iron or

steel.  The Court holds that the proper classification of the elfa® top tracks and hanging

standards is tariff provision 8302.42.30, HTSUS.

**CONCLUSION**

    For the reasons discussed above, the Court holds that the subject imports are

properly classified in tariff provision 8302.42.30, HTSUS.  Thus, the Court denies the

Container Store's motion for summary judgment and grants the United States' cross-

motion for summary judgment.  Judgment will be entered accordingly.


/s/     Mark A. Barnett

Mark A. Barnett, Judge

Dated: January 21, 2016
        New York, New York